UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


TERRY ALLEN PARKS                                CIVIL ACTION

v.                                               NO. 16-15466

TERREBONNE PARISH                                SECTION "F"
CONSOLIDATED GOVERNMENT, ET AL.


ORDER AND REASONS

Before the Court are two motions: (1) Multi-Management Services, Inc.'s motion to dismiss for failure to state a claim; and (2) Terrebonne Parish Consolidated Government's motion to dismiss under Rule 12(b) for failure to state a claim, or alternatively, motion for summary judgment, or for a more definite statement. For the reasons that follow, MMSI's motion is GRANTED, and the Parish's motion is GRANTED in part and DENIED in part.

**Background**

This civil rights litigation was instigated by a former Terrebonne Parish employee who alleges that he was forced into early retirement after a positive drug test, a test that allegedly failed to comply with federally-mandated drug testing procedures.

Terry Allen Parks began working for Terrebonne Parish Consolidated Government on April 5, 1982 and, after a probationary

1

period, he became a permanent employee of the Parish.[1]  As a tenured and permanent public employee, Parks could only be terminated for cause with notice and an opportunity to be heard pursuant to a procedure established by the official municipal policy of the Parish.   During his 33 years of employment, Parks had only one verbal reprimand.   Parks planned to retire at the age of 62, in 2021, despite having the necessary retirement credits to have done so since April 2014.

Throughout his employment, the Parish had in effect a drug testing policy, which called for random drug testing of safety sensitive employees, such as Parks.  The policy provides that "all [Parish] drug screens shall be submitted in accordance with the guidelines set out by the United States Department of Transportation at 49 CFR Part 40."  Pursuant to Parish policy, employees who test positive for illegal substances are subject to immediate termination; this is so regardless of whether the drug test is administered in accordance with procedural safeguards, standards, and federal regulations.   On October 12, 2015, Parks was required to submit to a random drug test as a condition of his employment as an Instrumentation Technician.  The drug test was administered and the sample collected by Multi-Management Services, Inc.; the sample was tested by Alere Toxicology Services,

---

[1] The factual summary is drawn from the complaint.

Inc.; and it was reviewed by Brian N. Heinen, a Professional Medical Corporation. MMSI, Alere, and Heinen, it is alleged, were agents for the Parish and directed by it to implement official municipal policy and carry out the government function of drug testing its employees.

Three days after the test, Parks was advised that the drug test indicated positive for marijuana. That same day, Parish Manager Al Levron told Parks he could either resign and take early retirement, or be fired. Later that day, Parks presented a written resignation letter to the Parish Director of Human Resources, Dana Ortego, in which he requested his retirement benefits.

Parks claims that the positive test result was due to procedural errors made by MMSI, Alere, and Heinen in administering the test, and that the procedural guidelines dictate that the test should have been reported as rejected or cancelled. In particular, Parks alleges that MMSI violated the procedures and standards contained in 49 CFR Part 40 by failing to follow the guidelines concerning chain of custody and control: MMSI removed the specimen from Parks's sight during the collection process, rendering Parks unable to properly authenticate his specimen; MMSI failed to have Parks initial the tamper-proof labels, which would have facilitated accurate identification of the sample. Despite these

3

procedural deficiencies, it is alleged, MMSI forwarded the specimen to Alere, the laboratory used by the Parish, for testing.

Parks alleges that Alere also violated the relevant procedures for testing: Alere violated the Department of Transportation procedures by failing to recognize the flaws in the chain of custody and the lack of Parks's initials on the specimen labels; which should have halted the testing process and resulted in a rejected test. Parks further alleges that Heinen, the medical review officer for the Parish, who obtained the specimen from Alere, also violated the relevant procedures. Heinen, Parks alleges, breached his duty to act as an independent and impartial gatekeeper and advocate for the accuracy and integrity of the drug testing process by failing to determine that there was a problem with the drug testing procedures that should have caused the test to be cancelled. Upon confirmation of the test results received from Alere, it is alleged that Heinen violated the relevant procedures and standards by failing to directly contact Parks to discuss the results confidentially with him before reporting the results to his employer. Instead, Parks was contacted by a member of Heinen's staff to discuss the test result; Parks never spoke directly with Dr. Heinen prior to Heinen's report to the Parish regarding the positive drug test result.

Parks alleges that the positive drug test, which was done and taken in violation of the Fourth Amendment, cannot support the termination of a tenured public employee like him.  On October 12, 2016, Parks sued Terrebonne Parish Consolidated Government, Multi-Management Services, Inc., Alere Toxicology Services, Inc., and Brian N. Heinen, a Professional Medical Corporation, in this Court. After three of the defendants filed motions to dismiss, the plaintiff amended his complaint.[2]  Parks alleges that, for urine testing to be reasonable under the Fourth Amendment, the test must be conducted in accordance with minimum procedural requirements and standards.  The defendants violated the procedures contained in 49 C.F.R. Part 40, Parks alleges, as well as the nearly identical guidelines called for by state law, in particular, the Louisiana Drug Testing law, La.R.S. 49:1001, et seq.  Parks alleges that, in administering, collecting, testing, and reviewing the procedurally flawed drug test, MMSI, Alere, and Heinen were acting under color of state law and in accordance with official municipal policy.  Due to the objectively unreasonable acts of the defendants and the resulting unconstitutional search and seizure that led to his constructive discharge, Parks alleges he suffered financial losses including past lost wages, lost future earnings, lost life insurance premium benefits, lost long-term and short-term

---

[2] The Court denied as moot the motions to dismiss the initial complaint.

disability benefits, and lost deferred retirement benefits; he also claims that he has suffered mental anguish, emotional distress, and loss of enjoyment of life. Parks seeks reinstatement as well as damages. The Parish and MMSI now move to dismiss the claims asserted in the amended complaint.

I.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Such a motion is rarely granted because it is viewed with disfavor. See Lowrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997) (quoting Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982)).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009)(citing Fed. R. Civ. P. 8). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

6

In considering a Rule 12(b)(6) motion, the Court "accept[s] all well-pleaded facts as true and view[s] all facts in the light most favorable to the plaintiff." See Thompson v. City of Waco, Texas, 764 F.3d 500, 502 (5th Cir. 2014) (citing Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys, 675 F.3d 849, 854 (5th Cir. 2012)(en banc)).   But, in deciding whether dismissal is warranted, the Court will not accept conclusory allegations in the complaint as true.  Id. at 502-03 (citing Iqbal, 556 U.S. at 678).

To survive dismissal, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009)(quoting Iqbal, 556 U.S. at 678)(internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Twombly, 550 U.S. at 555 (citations and footnote omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.").  This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common

7

sense." Id. at 679. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. at 678 (internal quotations omitted) (citing Twombly, 550 U.S. at 557). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'", thus, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (alteration in original) (citation omitted).

Finally, "[w]hen reviewing a motion to dismiss, a district court 'must consider the complaint in its entirety, as well as other sources ordinarily examined when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Funk v. Stryker Corp., 631 F.3d 777, 783 (5th Cir. 2011)(quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)).

## II.

### A.

Parks bring this civil rights action under 42 U.S.C. § 1983 for alleged violations of his constitutional rights. Parks contends that a urinalysis administered pursuant to the Parish's random drug testing program subjected him to an unreasonable search

and seizure and that his resulting constructive discharge in response to the positive test result deprived him of property without due process of law, in violation of the Fourth and Fourteenth Amendments to the U.S. Constitution.

Terrebonne Parish Consolidated Government and MMSI seek to dismiss the plaintiff's claims based on Section 1983 and state law. The Parish contends that Parks fails to allege an official municipal policy or custom that violated his Fourth or Fourteenth Amendment rights, and that Parks fails to allege a constitutional violation sufficient to state a claim for municipal liability. MMSI contends that Parks fails to allege that it acted under color of state law in administering the drug test and that he also fails to allege a constitutional violation. The plaintiff counters that he has sufficiently alleged that the procedurally flawed drug test violated his Fourth Amendment right to be free from unreasonable search and seizures, that he was constructively discharged without the process due to him under the Fourteenth Amendment, and that MMSI's action as an agent of the Parish constitutes state action.

*B.*

Section 1983, which was enacted pursuant to Congress's authority to enforce the Fourteenth Amendment, prohibits interference with federal rights under color of state law. Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982). It creates a

private right of action for violations of federally-secured rights under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws...shall be liable to the party injured....

42 U.S.C. § 1983.   To state a § 1983 claim, a plaintiff must satisfy three elements:

> (1) deprivation of a right secured by the U.S. Constitution or federal law;
>
> (2) that occurred under color of state law, and
>
> (3) was caused by a state actor.

Victoria W. V. Larpenter, 369 F.3d 475, 482 (5th Cir. 2004)(citation omitted).

### C.

Parks alleges that, as a safety-sensitive employee of the Parish, he was subject to random drug tests in accordance with Parish policy.   Parks alleges that the drug test was procedurally defective and therefore "done and taken" in violation of the Fourth Amendment of the U.S. Constitution and the Louisiana constitutional equivalent.

The Fourth Amendment forbids "unreasonable searches and seizures." U.S. CONST. amend. IV.  Fourth Amendment implications of compelled urine testing in the workplace are settled.  Drug testing is a search within the meaning of the Fourth Amendment because it intrudes upon an individual's expectation of privacy. Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 652 (1995)(citing Skinner v. Rwy. Labor Execs. Ass'n, 489 U.S. 602, 617 (1989)).  To comply with the Fourth Amendment's reasonableness requirement, drug testing generally must be based on individualized suspicion of wrongdoing.  Chandler v. Miller, 520 U.S. 305, 313 (1997)(citing Vernonia, 515 U.S. at 652-53).  "But particularized exceptions to the main rule are sometimes warranted based on 'special needs[,]'" which include "concerns other than crime detection." Id. (quoting Skinner, 489 U.S. at 619).  Accordingly, "where a Fourth Amendment intrusion serves special government needs[], it is necessary to balance the individual's privacy expectations against the Government's interests to determine whether it is impractical to require a warrant or some level of individualized suspicion in the particular context." Nat'l Treasury Emps. Union v. Von Raab, 489 U.S. 656, 665-66 (1989).

The "special needs" framework of Skinner, which held that drug tests for transportation safety fall into the "special needs" exception to the warrant requirement, applies to the Parish's drug

testing policy of safety sensitive employees like Parks.[3]   In
Skinner, the Supreme Court held that public safety is a special,
non-law-enforcement need justifying drug testing of safety-
sensitive railroad employees as a way of enforcing restrictions on
workplace drug and alcohol use.   Skinner, 489 U.S. at 620-21.
Skinner endorsed an approach in which courts examining the
reasonableness of drug testing programs of safety-sensitive
employees must balance the employees' privacy interests against
the government's need to test without individualized suspicion.
Id. at 624.   Considering the privacy interest, the Supreme Court
concluded that the unobserved urine tests required by the
regulations were not a severe privacy intrusion because the
employees' privacy expectations were significantly reduced by
their "participation in an industry that is regulated pervasively
to ensure safety, a goal dependent, in substantial part, on the[ir]
health and fitness." Id. at 627.   On the other hand, Skinner found
"compelling" the government's interest in drug testing safety
sensitive employees without a showing of individualized suspicion,
ultimately concluding that the government's compelling interest
outweighed the privacy concerns.   Id.   Accordingly, applying this
framework, a warrantless drug test serving special needs may be
reasonable under the Fourth Amendment if, upon conducting a

---

[3] Parks alleges that he is a safety-sensitive employee, an
Instrumentation Technician.

balancing test, the Court finds that the government's interest in conducting the search outweighs the individual's privacy interest. See id.

D.

Parks alleges that the Parish forced him to retire when his drug test indicated positive for marijuana, and that this constructive discharge deprived him of his property interest in employment without due process of law.

The Fourteenth Amendment forbids a state from depriving "any person of life, liberty, or property, without due process of law." U.S. CONST. amend XIV, § 1.   "[C]ertain public employment situations may endow an employee with a legally cognizable property interest." Muncy v. City of Dallas, Tex., 335 F.3d 394, 398 (5th Cir. 2003)(citation omitted).   Whether a property interest exists "is guided by the specific nature and terms of the particular employment at issue, and informed by the substantive parameters of the relevant state law." Id.

To state a Section 1983 claim based on termination of employment without being afforded procedural due process, Parks must allege that (1) he has a property interest in his employment sufficient to entitle him to due process protection; and (2) that he was terminated without receiving the due process protections to which he was entitled. See McDonald v. City of Corinth, Tex., 102

F.3d 152, 155-56 (5th Cir. 1996).  "In Louisiana, a permanent classified civil service employee has a protected property interest in [his] job." See Wallace v. Shreve Mem'l Library, 97 F.3d 746, 748 (5th Cir. 1996).  "'[S]ome type of hearing' is ordinarily a constitutional requirement for due process purposes before a public employee who has a property interest in his job may be terminated." Fowler v. Carrollton Pub. Library, 799 F.2d 976, 980 (5th Cir. 1986)(citing Cleveland Bd. of Educ. V. Loudermill, 470 U.S. 532, 542 (1985)).  The Supreme Court has explained:

> The essential requirements of due process ... are notice and an opportunity to respond.  The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental requirement.  The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.  To require more than this prior to termination would intrude an unwarranted extend on the government's interest in quickly removing an unsatisfactory employee.

Loudermill, 470 U.S. at 546 (citations omitted).

If Parks was a permanent classified civil service employee and if he was terminated, the Parish's failure to provide him with predeprivation procedures "unquestionably violated his constitutional rights." Fowler, 799 F.2d at 980.  Parks does not allege that he was fired, but he does allege that he was constructively discharged.

14

"To show constructive discharge, an employee must offer evidence that the employer made the employee's working conditions so intolerable that a reasonable employee would feel compelled to resign." Finch v. Fort Bend Indep. Sch. Dist., 333 F.3d 555, 562 (5th Cir. 2003)(citation omitted). In other words, a constructive discharge occurs when the employer places the employee "between the Scylla of voluntary resignation and the Charybdis of forced termination." Fowler, 799 F.2d at 981. Notably, "[c]onstructive discharge in a procedural due process case constitutes a § 1983 claim only if it amounts to forced discharge to avoid affording pretermination hearing procedures." Id.; see also Rutland v. Pepper, 404 F.3d 921, 923 (5th Cir. 2005).

*E.*

Parks' Section 1983 claims against the Parish must be analyzed in accordance with the Monell framework. Municipalities are "persons" within the meaning of § 1983. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978). But, it has been cautioned, "[t]hey are liable only for their own acts and not those attributed to them by principles of *respondeat superior*." Larpenter, 369 F.3d at 482 (citing Monell, 436 U.S. at 691-92). Imposition of Section 1983 liability against a municipality under Monell is appropriate in the limited circumstance of when a constitutional tort is caused through the execution of a policy or custom of the

15

municipality.  See Bowen v. Watkins, 669 F.2d 979, 989 (5th Cir. 1982)(citation omitted).  "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom ... inflicts the injury that the government as an entity is responsible under § 1983." Monell, 436 U.S. at 694.

To determine whether municipal liability attaches, the Court looks to whether unconstitutional conduct is directly attributable to the municipality through some official custom or policy; "isolated unconstitutional actions by municipal employees will almost never trigger liability."  See Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001)(citations omitted). Indeed, the rules for imposing municipal liability are well-settled; proof of three elements is vital: (1) a policy maker; (2) an official policy or custom; and (3) causation: a violation of constitutional rights whose "moving force" is the policy or custom. Id. (citing Monell, 436 U.S. at 694).[4]  Official municipal policy, the U.S. Supreme Court has observed, "includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have

---

[4] Proof of these three elements is necessary "to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." Burge v. Parish of St. Tammany, 187 F.3d 452, 471 (5th Cir. 1999) (citation omitted).

the force of law." See Connick v. Thompson, 131 S.Ct. 1350, 1359 (2011)(citations omitted)("These are 'action[s] for which the municipality is actually responsible.'").   The Fifth Circuit has defined an official policy for Section 1983 purposes as:

> 1.  A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.   Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

Bennett v. City of Slidell, 735 F.2d 861, 862 (5th Cir. 1984)(*en banc*).

"Municipal liability for civil rights violations under § 1983 is based on causation, rather than *respondeat superior*."   Bolton v. City of Dallas, 541 F.3d 545, 548 (5th Cir. 2008)(citation omitted).   "The fact that a tortfeasor is an employee or agent of a municipality is therefore not sufficient for city liability to attach; the municipality must cause the constitutional tort, which occurs 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'"   Id.

(citation omitted).   "That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the employee acted culpably."   Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. V. Brown, 520 U.S. 397, 411 (1997)("Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses [impermissibly] into respondeat superior liability."). A determination of municipal liability demands more, imposing "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."   Id. ("A plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision.").   "Liability for unauthorized acts is personal; to hold the municipality liable, Monell tells us, the agent's action must implement rather than frustrate the government's policy." Bolten, 541 F.3d at 551 (quoting Auriemma v. Rice, 957 F.2d 397, 400 (7th Cir. 1992)).

### III.

The Parish seeks to dismiss the plaintiff's claims against it on the grounds that Parks fails to allege a constitutional violation and fails to attribute any alleged violation to one of

18

its policies sufficient to warrant imposition of municipal liability. MMSI seeks to dismiss the plaintiff's claims against it on the grounds that Parks fails to allege a constitutional violation and fails to allege that MMSI is a state actor or that its private action is fairly attributable to the state.

A.  Section 1983 Claim Based on Fourth Amendment Violation

1.  The plaintiff's <u>Monell</u> claim based on an alleged Fourth Amendment violation must be dismissed for failure to state a claim.

Parks alleges that his drug test was procedurally defective and fatally flawed and this violated his Fourth Amendment right to be free from unreasonable searches and seizures. The Parish contends that Parks fails to allege that the Parish's drug testing policy was the moving force behind his Fourth Amendment violation and that this is fatal to his <u>Monell</u> claim based on the Fourth Amendment. The Court agrees.

Parks fails to state a claim for relief as to his Section 1983 claim based on an alleged Fourth Amendment violation because there is no allegation that the search was based on some unconstitutional policy. The Terrebonne Parish Consolidated Government's Personnel Policy Manual was attached to the

plaintiff's opposition papers.[5]   The Manual contains the Parish's anti-drug policy; pertinent to random testing, it provides:

> E-2 Random testing
> E-2.1  All DOT regulated employees and NON-DOT employees who occupy safety-sensitive or security-sensitive positions, shall be subject to random selection for submission of a urine specimen and breath sample for routine analysis and screening for the presence of controlled, dangerous substances and alcohol, in accordance with all applicable state and federal laws and regulations.

Parks does not mount a facial challenge to the constitutionality of this policy.   Parks does not meaningfully dispute that this municipal drug testing policy, which mandates random drug tests of safety sensitive employees like him, is constitutionally permissible.   Nevertheless, he complains that his drug test was "performed haphazardly, without adherence to federal and state regulations."   In other words, Parks complains that his particular drug test was not conducted in accordance with the Department of Transportation regulations.   Even if the Court assumes that Parks alleges a Fourth Amendment constitutional violation attributable to procedural errors in administering his drug test, he fails to allege that his constitutional injury is attributable to an unconstitutional Parish policy or custom.   To the contrary, the Parish's policy regarding "Drug Testing Procedure" mandates

---

[5] There is no dispute that the Court may consider this public record without converting the motions to dismiss into ones for summary judgment. See Funk, 631 F.3d at 783.

compliance with the Department of Transportation regulations; it states: "All Terrebonne Parish drug screens shall be submitted in accordance with the guidelines set out by the United States Department of Transportation at 49 CFR Part 40." See TP Personnel Policy Manual, Section 13, J-1. Because Parks fails to allege that the Parish has a policy or custom that violated his constitutional rights, he has not stated a plausible Monell claim based on a Fourth Amendment violation.

> 2. The plaintiff's Section 1983 claim based on the Fourth Amendment against MMSI must be dismissed for failure to state a claim.

Parks alleges that MMSI failed to comply with federally mandated drug testing procedures when MMSI collected his urine sample. In particular, he alleges at paragraphs 12 and 13 of his amended complaint:

> On October 12, 2015, TPCG management, acting pursuant to official municipal policy, required the Plaintiff to submit to a random drug test, which was administered and collected by MMSI, tested by Alere, and reviewed by Heinen. The Defendants, MMSI, Alere, and Heinen, agents for TPCG, were directed by TPCG to implement official municipal policy and carry out the government function of drug testing its employees.

> In its collection of the Plaintiff's urine specimen, MMSI violated the procedures and standards contained in 49 CFR Part 40, resulting in a procedurally invalid drug test. MMSI failed to follow the proper guidelines in connection with the chain of custody and control. MMSI removed the Plaintiff's specimen from his (Plaintiff's) sight during the collection process, resulting in the Plaintiff being unable to properly

> authenticate his specimen.  MMSI also failed to have Plaintiff initial the tamper-proof labels, which is vital to accurately identifying the specimen and certifying the sanctity of the test.  Despite these procedural deficiencies, MMSI forwarded the test to Alere, the laboratory utilized by TPCG, for testing.

MMSI contends that Parks fails to state a Section 1983 claim because he fails to allege that MMSI was acting under color of state law in administering the drug test.  MMSI contends that dismissal is appropriate for the additional reason that Parks alleges that MMSI acted in contravention of the Parish's drug testing policy and, therefore, fails to allege that MMSI acted under color of state law.  The Court agrees.

Because MMSI is a private actor, "the challenged 'conduct allegedly causing the deprivation of a federal right' must be 'fairly attributable to the State' for Section 1983 to apply." Doe v. United States, 831 F.3d 309, 314 (5th Cir. 2016)(quotation omitted).  To determine whether private action is "fairly attributable to the State[,]" the Supreme Court has used at least four tests.  Cornish v. Corr. Servs. Corp., 402 F.3d 545, 550 (5th Cir. 2005).  "It is unclear whether these tests 'are actually different in operation or [are] simply different ways of characterizing the necessarily fact-bound inquiry,'" the Fifth Circuit has observed.  Doe, 831 F.3d at 314 (citation omitted). When tasked with determining whether an action is fairly

attributable to the State, the Court begins by identifying the specific conduct of which the plaintiff complains. <u>Doe</u>, 831 F.3d at 316 (citing <u>Cornish</u>, 402 F.3d at 550).

It appears that Parks invokes the nexus test.[6]   The nexus test focuses on whether the state's involvement is such that the private actor's conduct can fairly be treated as that of the state itself.   <u>Doe</u>, 831 F.3d at 314.   Here, read generously, Parks alleges that the Parish contracted with MMSI (and others) to administer its random drug testing policy.   Parks complains that -- in violation of Parish policy that drug tests comply with federal regulations -- MMSI failed to follow federal protocol by failing to abide by chain of custody requirements and failing to use tamper proof labels, rendering the test procedurally deficient.   But, the "[a]cts of ... private contractors do not become acts of the government by reason of their significant or total engagement in performing public contracts." <u>Cornish</u>, 402 F.3d at 550 (citation omitted).   There are no allegations to suggest that the Parish had any role whatsoever, or maintained any

---

[6] Parks does not allege facts that would support a finding that MMSI performs a function traditionally existing as the exclusive province of the state (such that the public function test would be met); nor does Parks allege facts that would support a finding that the Parish has exercised coercive power or encouraged MMSI to manipulate the drug test (such that the state compulsion test would be met); nor does Parks allege facts that would support a finding that MMSI and the Parish were jointly engaged in administering the procedurally defective drug test (such that the joint action test would be met).   <u>See</u> <u>Doe</u>, 831 F.3d at 315 n.3.

involvement in, let alone control over, the drug testing procedures of which Parks complains. Furthermore, Parks's conclusory allegation that MMSI was an agent of the Parish fails to include facts that, if true, would indicate that MMSI's alleged procedural failures are attributable to the Parish.

Additionally, Parks fails to allege that MMSI conspired with or acted in concert with the Parish sufficient to subject a private entity such as MMSI to liability under Section 1983. See Priester v. Lowndes Cnty., 354 F.3d 414, 420 (5th Cir. 2004). There are no allegations in the amended complaint that suggest that the Parish and MMSI agreed with each other to manipulate Parks's drug test by botching the testing procedures. In fact, Parks alleges that MMSI violated municipal policy by failing to comply with the federal regulations governing drug testing procedures. Parks alleges that the Parish had a policy requiring adherence to DOT regulations in drug testing employees and that MMSI, the private actor hired to administer the drug test, failed to comply with those regulations. When the conduct about which Parks complains cannot be ascribed to a decision by the Parish, he cannot state a claim under Section 1983 because he challenges only private action. See Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 940 (1982).

Finally, MMSI also contends that Parks's Section 1983 claim based on a Fourth Amendment violation must be dismissed because he fails to allege a constitutional violation.  The Court agrees.

Parks alleges that he is an Instrumentation Technician and is considered a safety sensitive employee in the context of the Parish's drug testing policy.  Parks does not dispute that the "special needs" framework of <u>Skinner</u> applies here.  Nor does Parks dispute that the Parish's compelling interest in drug testing safety sensitive employees without a showing of individualized suspicion outweighs his privacy concerns.  Notably, Parks does not allege that MMSI's bungled drug test exceeded the scope of a typical, constitutionally permissible drug test.  Instead, it appears that Parks's theory underlying his alleged Fourth Amendment violation is that drug tests that fail to conform with federal (and state) safety regulations violate the Fourth Amendment as a matter of law.  He offers no case literature to support his novel theory.

Parks argues that "[t]he purpose of the drug testing guidelines set out at 49 CFR Part 40 is to ensure that a drug test meets certain standards that guarantee reliability and accuracy before they can be used to support significant consequences to an individual employee who is subject to the test."  Parks is wrong.  The purpose of the federal drug testing regulations -- the reason

25

why the Secretary of Transportation was tasked with prescribing regulations to establish drug testing programs -- is "[i]n the interest of motor vehicle safety." 49 U.S.C. § 31306. The regulations themselves provide that "[t]he purpose ... is to establish programs designed to help prevent accidents and injuries resulting from the misuse of alcohol or use of controlled substances by drivers of commercial motor vehicles." 49 C.F.R. § 382.101. Indeed, "[t]his regulatory scheme does not evince a concern for the protection of drivers who believe that they have been aggrieved through the drug testing process," and courts generally hold that these regulations do not imply a private cause of action. See Parry v. Mohawk Motor of Michigan, Inc., 236 F.3d 299, 308-09 (6th Cir. 2000); Drake v. Lab. Corp. of Am. Holdings, 290 F. Supp. 2d 352, 354 (E.D.N.Y. 2003), aff'd, 458 F.3d 48 (2d Cir. 2006).

Constitutional challenges to drug tests typically involve alleged violations of privacy, targeting overly invasive collection procedures. See, e.g., BNSF Ry. Co. v. U.S. Dept. of Transp., 566 F.3d 200 (D.C. Cir. 2009)(finding that partial disrobing requirement that was part of regulation requiring direct observation urine tests represented reasonable procedure for situations posing heightened risk of cheating, despite contention that it amounted to a strip search); Kennedy v. City of New York, No. 94-2886, 1995 WL 326563, at *4 (S.D.N.Y. Jun. 1,

1995)(considering constitutional violation where plaintiff was "allegedly ordered to urinate in his hospital room, in front of friends and relatives, including police officers"). Here, Parks does not allege any such concerns regarding his privacy. Rather, his challenge focuses on seemingly incompetent or faulty procedures in administering his drug test; he does not challenge the reasonableness or scope of the test called for by Parish policy. At best, his allegations suggest negligence in administering the test on the part of MMSI and the other private entity defendants. Parks fails to allege a Fourth Amendment violation.

B. Section 1983 Claim Based on Fourteenth Amendment Violation

The Parish and MMSI both seek dismissal of the plaintiff's Section 1983 claim that he was deprived of his property interest in employment without due process required by the Fourteenth Amendment when he was constructively discharged after his drug test indicated positive for marijuana. Because the plaintiff appears to abandon any Section 1983 claim based on the Fourteenth Amendment as to MMSI,[7] the Court focuses on the plausibility of his Monell claim against the Parish.

_____

[7] In opposing MMSI's motion to dismiss, Parks only addresses MMSI's arguments concerning his Fourth Amendment claim. MMSI's arguments favoring dismissal of the Section 1983 claim based on a Fourteenth Amendment claim have obvious merit. Parks fails to allege any

Parks alleges that he has a property interest in his continued employment with the Parish and complains that municipal policy calls for termination of employment regardless of whether the drug test is administered in accordance with established procedural safeguards, standards, and federal regulations.   The Parish contends that Parks fails to allege a property interest in his continued employment, concluding without citation to authority that "a public employee does not have a protected interest in continued employment when he can be terminated for good cause." The Parish also argues that the plaintiff fails to allege facts sufficient to support a finding that he was constructively discharged; the Parish insists that Parks voluntarily resigned. Viewing the well-pleaded allegations in the light most favorable to the plaintiff, the Court finds that Parks has plausibly alleged a Section 1983 claim against the Parish based on the Parish's policy of firing employees who test positive for drugs.

Parish policy calls for termination of employment of any individual who tests positive for controlled substances, including marijuana.[8]   Parks challenges this policy as depriving him of his

---

facts that would support a finding that MMSI played any role in the ultimate employment decision by the Parish.   Moreover, according to Parish policy, Parks could be fired regardless of compliance with the procedures Parks alleges MMSI violated.

[8] The Personnel Policy Manual states:

property interest in his employment without due process.  He
alleges that he was forced to retire, with no predeprivation
hearing, solely as a result of a positive drug test that failed to
follow protocol.

Although the Parish disputes Parks's allegation that he had
a property interest in continued employment, the Parish offers no
support for its contention that he did not because he could be
fired for cause.  In fact, the plaintiff's position finds support
in the Supreme Court, which has "held that public employees who
can be discharged only for cause have a constitutionally protected
property interest in their tenure and cannot be fired without due
process." Gilbert v. Homar, 520 U.S. 924, 928-29 (1997)(citations
omitted).  The Court need not decide whether, in fact, Parks had
a property interest in his continued employment at this stage of
the litigation; neither side grapples with the individualized
inquiry informed by Louisiana law.[9]  However, because Parks alleges

---

G.  DISCIPLINARY ACTION

...

G-2  the confirmed presence of a controlled, dangerous
substance in a urine sample of an employee/prospective
employee shall result in termination of said individual.

[9]  The Court points out that Parish policy at G-7 provides:

As relates to TPCG employees within the Houma Fire and
Police Civil Service System, disciplinary action
provided for in this policy shall be imposed in

that he has such a property interest, dismissal is not appropriate. If Parks was a permanent classified civil service employee and if he was terminated, the Parish's failure to provide him with predeprivation procedures "unquestionably violated his constitutional rights." See Fowler, 799 F.2d at 980.

The Parish also seeks to dismiss the plaintiff's claim based on his property interest deprivation on the ground that Parks was not fired, but, rather, chose to retire. The Court need look no further than the plaintiff's allegations to reject the Parish's argument. Parks alleges that he was constructively discharged and includes facts that, if true, plausibly support such a claim. As outlined above, a constructive discharge occurs when the employer places the employee "between the Scylla of voluntary resignation and the Charybdis of forced termination." Fowler, 799 F.2d at 981. Parks alleges that he was confronted with an "either or" termination proposition; that he was required to make the decision "on the spot;" and that he had been informed by a supervisor that he could lose his retirement if he was fired. Parks has alleged that he has a property interest in his employment, and that he was terminated (or constructively discharged) without receiving the due process protections to which he alleges he was entitled.

---

accordance with applicable state Fire and Police civil service law and due process requirements.

30

Accordingly, he has stated a Section 1983 claim based on termination of employment without being afforded procedural due process.  See McDonald v. City of Corinth, Tex., 102 F.3d 152, 155-56 (5th Cir. 1996).

### C.  State law Claims

MMSI also seeks to dismiss the plaintiff's Louisiana constitutional claims on the ground that such claims also require action by a state actor.  Indeed, the plaintiff's state constitutional claims against MMSI fail because neither state constitutional provision "extend[s] so far as to protect private citizens against the actions of private parties."  See Brennan v. Board of Trustees for Univ. of La. Sys., 691 So. 2d 324, 328 (La.App. 1 Cir. 3/27/97).[10]

Accordingly, for the foregoing reasons, IT IS ORDERED: that the Parish's motion to dismiss is hereby GRANTED in part (insofar as it seeks to dismiss the plaintiff's Section 1983 claim based on the Fourth Amendment) and DENIED in part (insofar as it seeks to dismiss the plaintiff's Section 1983 claim based on the Fourteenth Amendment, insofar as it seeks to dismiss the plaintiff's state

---

[10] The Parish also appears to seek dismissal of the plaintiff's state constitutional claims, but it does so in a conclusory manner. Its failure to adequately brief the viability of Parks's state constitutional claims warrants denial in part of its motion, without prejudice.

law claims, an issue it inadequately briefed, and insofar as it alternatively seeks summary judgment or a more definite statement),[11] and MMSI's motion to dismiss is hereby GRANTED.

New Orleans, Louisiana, February 22, 2017

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[11] The Parish also moves for summary judgment or for a more definite statement.  It fails to adequately support either request.

32